
FILED
FEB 27 2015
Clerk, U.S. District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>CHRISTOPHER KYLE SHERROD,<br><br>Defendant/Movant. | Cause No. CR 13-58-BLG-SPW<br>CV 14-92-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

On July 25, 2014, Defendant/Movant Christopher Kyle Sherrod filed a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Sherrod is a federal prisoner proceeding pro se.

The motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory

1

Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## I. Background

On July 18, 2013, a grand jury handed down an Indictment charging Sherrod with one count of possessing, with intent to distribute, 50 grams or more of methamphetamine, a violation of 21 U.S.C. § 841(a)(1) (Count I); one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1) (Count II); and one count of carrying a firearm during and in relation to a drug trafficking crime, a violation of 18 U.S.C. § 924(c) (Count III). If convicted on Count I, Sherrod faced a mandatory minimum prison term of ten years and a maximum of life in prison. 21 U.S.C. § 841(b)(1)(A)(viii). If convicted on Count II, he faced a maximum of ten years in prison. 18 U.S.C. § 924(a)(2). If convicted on Count III, he faced a mandatory prison term of five years consecutive to any other sentence imposed. *Id.* § 924(c)(1)(A)(i), (D)(ii).

On September 11, 2013, the parties filed a fully executed plea agreement. Sherrod agreed to plead guilty to Count I of the Indictment "because defendant is in fact guilty of the charge." Plea Agreement (Doc. 19) at 3 ¶ 4. The United States agreed to dismiss Counts 2 and 3 and to recommend a three-point reduction for acceptance of responsibility. *Id.* at 2-3 ¶ 3, 7 ¶ 6.

At the change of plea hearing, Sherrod said he understood he would not

"have any capacity to challenge conviction" at the point when Judge Haddon accepted his plea. Change of Plea Tr. at 20:6-12.[1] He said no one had "tried to force [him] somehow" or "threatened" him or "applied any other kind of pressure to get [him] to enter a guilty plea." *Id.* at 20:13-21. When Judge Haddon asked, "Has anyone made any promises to you to get you to do that? That is, to enter a guilty plea?" Sherrod responded, "Nothing beyond what's already in the agreement, just to drop Counts II and III." *Id.* at 20:22-25.

As to the facts of the case, Sherrod agreed that each statement in the United States' Offer of Proof was true, except the statement, "In fact, while outside Trooper Fetterhoff's vehicle, Sherrod became so nervous that he fainted and passed out beside the car; aid was rendered to Sherrod." Change of Plea Tr. at 29:3-30:7; Offer of Proof (Doc. 17) at 5 ¶ 5. As a result, Sherrod admitted that he was stopped on I-94 in Wibaux County, Montana, on May 1, 2013. He admitted he told Trooper Fetterhoff that his name was on the rental agreement for the car he was driving, and he admitted the officer did not see it there. He admitted that the rental agreement showed the vehicle had been rented on April 15, 2013, in Portland, Oregon, and was supposed to be returned by April 19, 2013. He admitted the car was supposed to be driven only in Oregon and Washington. He admitted

---

[1] The transcript was prepared before the hearing on Sherrod's motion to withdraw his guilty plea but was not filed in the record of the case. The United States will be required to order the original transcript for the file and to purchase a copy for Sherrod and deliver it to him.

3

the officer contacted his post-prison supervision officer in Oregon and she asked that Sherrod be taken into custody because his presence in Montana violated the terms of his supervision. He admitted the owner of the rental car, Enterprise, asked that personal property be removed from the vehicle. He admitted a search warrant was obtained for the black gym bag that was removed from the car. He admitted the gym bag was his. He admitted it contained 334.1 grams of pure methamphetamine and a Hi Point .40-caliber handgun. Offer of Proof at 3-5 ¶¶ 2-4, 5-6 ¶¶ 6-9. Under oath at the change of plea hearing, Sherrod said "the container of methamphetamine was discovered in my bag" and "I was headed to Minnesota" with "the dope." Change of Plea Tr. at 27:17-28:23. He pled guilty. *Id.* at 30:21-23.

Before sentencing, however, Sherrod moved to withdraw his guilty plea. He claimed counsel should have challenged the legality of the traffic stop and all the ensuing events that led to discovery of the methamphetamine. But Sherrod knew, before he entered his guilty plea, that he could contest the search and on what grounds. He knew his counsel had never contacted his Oregon supervision officer and had not obtained the warrant she reportedly said she would fill out. He knew counsel was not able to fulfill his additional requests to "get certain things." Sherrod said:

> I understood I was giving up some rights, the plea colloquy shows
> that. But I did not understand how my rights applied under the law.
> Even though there was some discussion about it. It was not discussion
> in case – within law. It was simply me saying: "This police officer is

4

> lying. This took place." And the result is: But can you prove it? And now I feel that I can prove some of this.
>
> . . .
>
> Plea colloquy doesn't tell you what rights you're actually waiving, except for rights to a trial and rights to appeal. It doesn't tell you – it doesn't describe to you how your rights are violated by an unscrupulous police officer.

Hr'g Tr. (Doc. 47) at 25:13-19, 27:6-9. Sherrod also said of counsel, "he can't be expected to go over everything with a fine-tooth comb. There's not enough hours in the day for him to be able to do that." *Id.* at 21:19-21. He added that counsel spotted, after the change of plea hearing, "an additional [issue] that's not completely obvious on the face by reading the police reports." *Id.* at 24:7-15.

Sherrod also said:

> I did not want to take the deal. I did not want to take the plea agreement. I signed it on one condition. He [counsel] told me that if I chose to change my plea agreement, that he would help me do so. And that is why I agreed to take the deal. Because I did not know my rights. I had to rely upon what was being explained to me. And once I was able to actually see what the law says, I realized what I'd waived.

Hr'g Tr. at 26:24-27:5.

Sherrod admitted that on the day before he changed his plea, while he was speaking with counsel in the jail, he fainted and required medical attention. *Id.* at 25:20-26:3. He followed up by stating that he knew his plea would not be accepted by Judge Haddon if he disagreed with the facts in the Offer of Proof. *Id.* at 26:3-7. He also said, "I'm not guilty of the charge I pled guilty to." *Id.* at 27:13-14. This Court found Sherrod failed to show a fair and just reason to withdraw his guilty

5

plea. Hr'g Tr. at 33:9-15.

Sentencing was held the next day. Based on a total offense level of 33 and a criminal history category of IV, the advisory guideline range was 188-235 months. On February 13, 2014, Sherrod was sentenced to serve 200 months in prison, to be followed by a five-year term of supervised release. Judgment (Doc. 37) at 2-3.[2]

Sherrod timely filed his motion under 28 U.S.C. § 2255 on July 25, 2014. 28 U.S.C. § 2255(f)(1).

## II. Claims

Sherrod alleges that counsel gave bad legal advice and did not adequately investigate the case. He also claims that his motion to withdraw his guilty plea should have been granted and that counsel "created a conflict of interest" in his arguments in support of the motion to withdraw. Mot. § 2255 (Doc. 56) at 4-5.[3]

## III. Analysis

Sherrod's central allegation is that his guilty plea was involuntary because counsel did not conduct reasonable factual investigation and legal research.

"When a criminal defendant has solemnly admitted in open court that he is

---

[2] Sherrod submitted a pro se notice of appeal, but it was untimely. Notice of Appeal (Doc. 40); Order re: Def.'s Withdrawal of Notice of Appeal (Doc. 54).

[3] Sherrod makes similar allegations against the attorney who represented him in proceedings in state court and who Sherrod thought was going to represent him in federal court as well. State counsel was counsel of record in this Court for at most 16 days at the beginning of the case. Whatever counsel's flaws were, there is no reasonable probability that, but for them, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Sherrod's allegations against that attorney will not be considered.

6

in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A guilty plea does not waive the defendant's opportunity to "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" defining the "wide range of reasonable professional assistance." *Id.* at 267. But the guilty plea means Sherrod must show not only that the claim he abandoned by pleading guilty had merit but also that his attorney's advice to plead guilty without having litigated the claim "rendered that advice outside the range of competence demanded of attorneys in criminal cases." *Id.* at 268 (internal quotation marks omitted).

### A. Motion to Suppress

Sherrod attempts to contradict specific facts underlying the time line of the search, from the traffic stop to eventual discovery of 334.1 grams of pure methamphetamine and a handgun in his gym bag. These attempts need not be explored in detail. As the Supreme Court has said:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would

7

> only delay the inevitable date of prosecution, or by contesting all
> guilt. A prospect of plea bargaining, the expectation or hope of a
> lesser sentence, or the convincing nature of the evidence against the
> accused are considerations that might well suggest the advisability of
> a guilty plea without elaborate consideration of whether pleas in
> abatement . . . might be factually supported.

*Henderson*, 411 U.S. at 267-68 (internal citations omitted).

Counsel's advice to accept the plea agreement and abandon any motion to suppress was squarely within the range of reasonable professional assistance. Counsel was concerned the favorable plea offer would be withdrawn if he filed a motion to suppress. Hr'g Tr. at 23:16-18. The probability of prevailing on a motion was neither so high nor so obvious that *no* competent counsel could have advised Sherrod as counsel here did.

To take a few examples, Sherrod suggests the math of Trooper Fetterhoff's traffic stop does not make sense. Assuming the trooper was traveling westbound on I-94 at 75 miles per hour, the math does indeed pose some issues. But there is no reason to assume the premise. The trooper was probably sitting in his patrol car at the side of the westbound lanes and doing radar checks on the traffic in the eastbound lanes. It is irrelevant whether Sherrod's supervision officer in Oregon ever obtained a warrant. Sherrod was arrested at the site of the stop because the trooper spoke with the officer on the phone. She said Sherrod was not supposed to leave Oregon and he should be arrested. The trooper had probable cause to arrest and exigent circumstances – especially in view of Sherrod's 2008 conviction for

escape, the existence of which contradicts Sherrod's claim that his criminal history predated the 2013 traffic stop by 15 years. Whatever else may be true of the rental car, only its use in Oregon and Washington was authorized. It was stopped in eastern Montana, and Sherrod was driving it to Minnesota. Whatever else may be true of co-renter Kill's statements, it was suspicious that he drove overnight from Minnesota to Glendive immediately after hearing about the traffic stop to recover the car from police, accompanied by another person who, like Kill himself, had a prior drug conviction.

Faced with a choice between the favorable plea offer and filing a motion to suppress, few competent defense attorneys would have advised pursuit of the motion to suppress. This claim is denied.

**B. Counsel's Pledge to "Fall on His Sword"**

Sherrod also alleges that counsel "committed himself to helping me to withdraw a guilty plea . . . should I feel the need to do so later" and that counsel's commitment was "the only reason I 'agreed' to the plea agreement." Mot. § 2255 at 5 ("Ground Two"). Sherrod claims counsel said he would "fall on his sword" by telling the Court "that I didn't explain things well enough to you, and that you didn't understand exactly what you were getting into. I failed to do my job as I should have, in other words." Sherrod Aff. (Doc. 56-1) at 6 ¶ 12; *id.* at 9 paras. 1-2.

For four reasons, this allegation does not support relief or further proceedings. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003). First, the Court has already determined that Sherrod *did* know exactly what he was getting into. That is why his motion to withdraw his guilty plea was denied. Hr'g Tr. at 28:25-33:15.

Second, that decision was made after the Court heard from both counsel and Sherrod about their discussions before the plea colloquy. At the hearing, Sherrod said "the final reason I agreed to take the plea" was that counsel told him the plea bargain was "the best opportunity" for Sherrod to be able to see his daughter. Hr'g Tr. at 26:13-23. It was. Although Sherrod also said he "did not want to take the plea agreement" and did so "on one condition" – that is, that "if I chose to change my plea agreement . . . [counsel] would help me do so," Hr'g Tr. at 26:24-27:2 – the statement was irrational. A guilty plea is not entered *because* counsel tells the defendant he can get out of it. Sherrod pled guilty because he wanted the benefits of the plea agreement. In fact, he wanted those benefits so much that, at the hearing on his motion to withdraw the plea, he almost admitted perjuring himself at the change of plea hearing. He explained his statements at the change of plea hearing by saying "when you take a plea agreement, if you disagree with the facts, you're not going to be allowed to have your plea accepted." Hr'g Tr. at 26:3-7, 28:8-21.

10

Ergo, Sherrod agreed with the facts because he wanted his guilty plea to be accepted.

Third, counsel *did* try to help Sherrod withdraw his guilty plea. Hr'g Tr. at 3:23-18:6. Counsel does not create a conflict of interest with his client by acknowledging binding authority. Counsel explained at length what Sherrod did and did not know at the time he changed his plea. Nothing about counsel's advice was unreasonable. Sherrod knew and did not know all the things every defendant does and does not know when he makes the choice between trial and guilty plea. Nothing in Sherrod's submissions under § 2255 materially alters the picture presented at the hearing on his motion to withdraw his guilty plea.

Fourth, to whatever extent Sherrod took counsel's offer to "fall on his sword" as a promise that counsel could extricate Sherrod from his guilty plea virtually at will, Judge Haddon's 30-page plea colloquy thoroughly dispelled that notion:

| | |
|---|---|
| The Court: | And if you plead guilty, and if I accept your plea, at that point, you will be convicted of the offense, and you won't have any capacity to challenge conviction after that. You understand that? |
| Sherrod: | I do. |
| The Court: | Now, do you still want to go ahead? |
| Sherrod: | Yes, Your Honor. |
| The Court: | Well, has anyone tried to force you somehow to come |

11

|            |                                                                                                    |
|------------|----------------------------------------------------------------------------------------------------|
|            | here to enter a guilty plea?                                                                       |
| Sherrod:   | No, Your Honor.                                                                                    |
| The Court: | Has anyone threatened you to get you to do so?                                                     |
| Sherrod:   | No.                                                                                                |
| The Court: | Well, has anyone applied any other kind of pressure to get you to enter a guilty plea?             |
| Sherrod:   | No, sir.                                                                                           |
| The Court: | Has anyone made any promises to you to get you to do that? That is, to enter a guilty plea?        |
| Sherrod:   | Nothing beyond what's already in the agreement, just to drop Counts II and III.                    |

Change of Plea Tr. at 20:6-25, 21:12-23.

This claim is denied.

**C. "Jury Prejudice"**

Finally, Sherrod claims that counsel "misrepresented jury prejudice." Mot. § 2255 at 4. This allegation is based in part on counsel's unremarkable observation that jurors in the Billings Division of the District of Montana are likely to be different than jurors in Portland, Oregon. Sherrod also speculates there must be a *Batson* violation[4] in the composition of any trial jury if most of the jurors are not from Billings. No one knows in advance who will be called from the 22 counties in

---

[4] *See Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986); *see also Coleman v. McCormick*, 874 F.2d 1280, 1283-84 (9th Cir. 1989) (en banc).

12

the Billings Division to constitute the venire at trial. *Batson* can only apply at voir dire. There is no reason to believe this District's jury pool, composed of persons with a driver's license and/or registered to vote, is discriminatory.

Most importantly, however, there is no reasonable probability a Montana jury would find that someone driving from Oregon to Minnesota with 334.1 grams of pure methamphetamine and a handgun might not be a drug trafficker. This claim is denied as frivolous.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Sherrod's claims do not meet even the relatively low threshold of 28 U.S.C. § 2253(c)(2). The plea agreement resulted in dismissal of a charge under 18 U.S.C. § 924(c), and there is no reason to doubt he would have been convicted at trial. No

defendant who pleads guilty knows exactly what would have happened had he pursued all possible pretrial defenses. Counsel's advice to forego a motion to suppress and accept the favorable plea offer was reasonable. Counsel did what he could to assist Sherrod in withdrawing the guilty plea when Sherrod changed his mind, but there was no fair and just reason to permit withdrawal. Now, there is no basis for encouraging further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Sherrod's motion to amend the record (Doc. 59) is GRANTED.

2. Pursuant to 28 U.S.C. § 753(f), the Court CERTIFIES that the transcript of Sherrod's change of plea hearing on September 16, 2013, is required to decide the issues presented by his § 2255 motion. The United States shall immediately order the transcript of that hearing for the Court's file, with a copy to be delivered to Christopher Kyle Sherrod # 12683-046, FCI Sheridan, Federal Correctional Institution, P.O. Box 5000, Sheridan, OR 97378.

3. Sherrod's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 56, 57, 60, 61) is DENIED;

4. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Sherrod files a Notice of Appeal;

5. The Clerk of Court shall ensure that all pending motions in this case and in CV 14-92-BLG-SPW are terminated and shall close the civil file by entering

judgment in favor of the United States and against Sherrod.

DATED this 27th day of February, 2015.

Susan P. Watters
United States District Court